FILED

2023 Jan-10  PM 09:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| JUMAR D. SIMS, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Civil No. 2:22-cv-08039 LSC |
| | ) | Crim No. 2:18-cr-00353-LSC-JHE-1 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, JUMAR D. SIMS ("Sims"), by and through counsel, Rolando Rankin, and in support of this memorandum would show as follows:

### I. STATEMENT OF JURISDICTION

Sims makes this timely filing pursuant to 28 U.S.C. § 2255  and seeks to vacate, set aside, or correct his sentence in case 2:18-cr-00353-LSC-JHE-1.

Jurisdiction is vested in the District Court that presided over and imposed sentence pursuant to Rule 4(a) of the Rules Governing § 2255 Proceedings. See *Liteky v. United States*, 510 U. S. 540, 562(1994). In § 2255 Motions, federal prisoners "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States," may move the "court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. §2255(a).

### II. STATEMENT OF THE GROUNDS FOR REVIEW

A.    Whether pretrial counsel's failure to: (1) Communicate with Sims and inform him

1

of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial; (2) Conduct an adequate and independent pretrial investigation; and (3) Attempt to negotiate a favorable Plea Agreement with a less harsh sentence, deprived Sims of effective assistance of pretrial and plea context counsel under the Sixth Amendment to the Constitution of the United States.

B.    Whether sentencing counsel failure to: (1) Correctly discuss and explain the PSR with Sims prior to the sentencing hearing; (2) File substantive objections to the PSR; and (3) Object to Sim's sentence being substantively unreasonable, deprived him of effective assistance of sentencing counsel and a fair and just sentence.

## III. STATEMENT OF THE CASE

### A.    Procedural Background

On July 25, 2018, a grand jury in the United States District Court for the Northern District of Alabama, Southern Division returned a three (3) count Indictment charging Sims. See Doc 1[1] Counts 1 and 2 charged Sims with Distribution of a Mixture and Substance Containing a Detectable Amount of Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Id. Count 3 charged Sims with Possession with the Intent to Distribute 50 Grams or More of Methamphetamine and a Mixture and Substance Containing a Detectable Amount of Heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(C). Id. The Indictment also contained a

---

1
"Doc." refers to the Docket Report in the United States District Court for the Northern District of Alabama, Southern Division in Criminal No. 2:18-cr-00353-LSC-JHE-1, which is immediately followed by the Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

Notice of Forfeiture, pursuant to 21U.S.C. § 853. See PSR ¶ 6.

On April 11, 2019, the government filed an Information pursuant to 21 U.S.C. § 851, citing Sim's prior felony drug convictions with the intention to seek enhanced penalties. See PSR ¶ 5. On April 16, 2019, a one-day trial commenced. No Doc. Entry.

On April 17, 2019, the grand jury returned a guilty verdict as to Sims on all counts of the Indictment. See Doc. 67.

On September 24, 2019, Sims was sentenced to a total term of 360 months' imprisonment, 180 months' Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $300. See Doc. 85.

On October 7, 2019, Sims filed a timely Notice of Appeal. See Docs. 88, 92.

On October 21, 2021, the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") affirmed Sim's sentences and convictions. See Doc. 116.

**B. Statement of the Facts**

1.  Offense Conduct

The following information was obtained through discovery from Drug Enforcement Agency ("DEA") Task Force Officer Jo Stacy, and from Assistant United States Attorneys Blake Milner and Austin Shutt.

> On January 10, 2018, a confidential source ("CS") informed DEA and Alabama Law Enforcement Agency (ALEA) agents that he/she could purchase ounce quantities of heroin from Sims, whom he knew as "Fat Boi" or "Big Boi." Using the CS, DEA arranged controlled heroin purchases from the defendant on January 11, 2018 and February 7, 2018.

> On January 11, 2018, the CS purchased 26.7 grams of a substance containing a detectable amount of heroin for $2,000 from Sims at an apartment complex in Hoover (off of Montgomery Highway) (confirmed by DEA toxicology report). The buy was recorded and monitored by law enforcement, and the defendant was driving a Dodge Charger registered to a female that the defendant was dating.

On February 7, 2018, the CS purchased 27.9 grams of a substance containing a detectable amount of heroin from Sims for $2,000 in the parking lot of Buffalo Wild Wings and Cracker Barrel in Pell City (confirmed by DEA toxicology report). The video recording of the controlled purchase malfunctioned. However, agents monitored the transaction by audio. Sims was once again driving the same Dodge Charger that was observed on January 11th.

On February 21, 2018, the CS arranged to purchase one kilogram of methamphetamine from the defendant. Through recorded calls, the CS and Sims arranged to meet at the Home Depot in Trussville (1600 Gadsden Highway). Law enforcement observed Sims leaving his home and traveling to the Home Depot in Trussville driving the same Dodge vehicle. Once Sims pulled into the parking lot, agents approached the defendant's car to arrest him. Sims refused to exit the vehicle; however, officers were able to open the passenger side door and pull him from the car. When the officer opened the passenger door of the vehicle, he observed a bag containing suspected narcotics in plain view sitting on the passenger seat. Inside that bag, agents found approximately 990 grams of methamphetamine with a purity of 97% for a pure weight of 960.3 grams. In the same bag officers located 56 grams of a substance containing a detectable amount of heroin (confirmed by DEA toxicology reports). The defendant was the only person in the vehicle at the time of the incident. See PSR ¶¶ 9-11.

2. Trial Proceeding

On April 16, 2019, a one-day jury trial commenced before District Court Judge L. Scott Coogler. No Doc. Entry. During trial, the District Court granted Sim's request for a limiting instruction on the contents of the recordings. The Court informed the jury that it would hear "a couple of different recordings" containing "the voice of ... a confidential source" and a second voice whom "the government] . . .contend[s] ... is that of the defendant." The Court instructed the jury that the statements of "the confidential source is . . . not in and of itself being offered for the truth of what the confidential source said" and instead was "offered to set up or explain . . . the answer that other individual is giving on the recording." The district court also instructed the jury that, "[i]f you believe that the other individual is the defendant. . then you are free to . . . take [his statements] as being offered for the truth of the matter asserted." Sims acknowledged that the

instruction was "acceptable." Sims argued that the admission of the recordings violated his rights under the Confrontation Clause, and also argued that Lipscomb's statements constituted inadmissible hearsay. On April 17, 2019, the jury found Sims guilty on Counts 1, 2, and 3 of the Indictment. See Doc. 67.

    3.   <u>Presentence Report Calculations and Recommendations</u>

On June 17, 2019, the Probation Office prepared Sim's PSR and revised it on July 10, 2019, using the November 1, 2018, edition of the Guidelines Manual to determine Sim's offense level. U.S.S.G §1B1.11. Counts 1, 2, and 3 were grouped pursuant to USSG § 3D1.2(d). See PSR ¶ 18. Group 1 calls for a Base Offense Level of 34 because Sim's conduct resulted in a combined drug weight of 19,206.01 Kilograms of Converted Drug Weight, pursuant to USSG § 2D1.1(c)(3). See PSR ¶ 19. However, Sims was classified as a career offender within the meaning of § 4B1.1; therefore, his offense level increased to level 37. The PSR calculated Sim's Total Offense Level to be level 37. See PSR ¶ 25. Sim's total criminal score of 7, placed him in Criminal History Category IV. However, pursuant to § 4B1.1(b), a career offender's Criminal History Category in every case shall be VI. See PSR ¶¶ 42, 43. Based on a Total Offense Level of 37 and a Criminal History Category VI, the guideline range for imprisonment would ordinarily be 360 months to life. However, Sims was designated as a career offender who is also convicted of 21 U.S.C. §§ 841(b)(1)(C) and (b)(1)(A); therefore, the applicable guideline range is 25 to 30 years pursuant to 21 U.S.C.§ 851. See PSR ¶ 85.

    4.   <u>Sentencing Proceeding</u>

On September 24, 2019, a Sentencing Hearing was held before District Court Judge L. Scott Coogler. At sentencing, the Court sentenced Sims to a total term of 360 months imprisonment as to Counts 1, 2, and 3, separately, with each count to be served concurrently with the other,

followed by a term of 180 months of supervised release. The Court also ordered payment of a Mandatory Special Assessment Fee of $300. See Doc. 85. A timely Notice of Appeal was filed on October 9, 2019. See Docs. 88, 92.

    5.   Appellate Proceeding

On Appeal, Sims challenged the admission of conversations he had with a confidential source as violating his right to confront witnesses under the Sixth Amendment. U.S. Const, amend. VI. The Eleventh Circuit affirmed Sim's convictions and sentences on October 21, 2021. See Docs. 115, 116; *USA v. Jumar D. Sims*, No. 19-13963 (11th Cir. 2021).

## IV. COGNIZABLE ISSUES UNDER 28 U.S.C. § 2255

The function of a § 2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or her detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, "unless the motion and the files and records of the case conclusively show

that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989). "[A] petitioner need only allege – not prove – reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Aron v. United States*, 291 F.3d 708 (11th Cir. 2002). However, a District Court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553.

A § 2255 Motion requires the District Court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *Aron*, 291 F.3d at 715 n.6. "Unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad, flexible, and entrusts the federal courts with the power to fashion appropriate relief. See Andrews v. United States, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See Kimmelman v. Morrison, 477 U.S. 365, 371-79 and n.3 (1986); Strickland v. Washington, 466 U. S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel, defendant must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375.

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371(1993) (citing *Strickland*, 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. Id.

The familiar two-part test of Strickland has been applied by the Supreme Court and the Second Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. With regard to the performance prong of the *Strickland/Hill* test, "if a defendant is represented by counsel and pleads guilty upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U. S. 759 (1970). "[T]o prove prejudice, [defendant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 841-42. "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test." *Glover v. United States*, 531 U.S. 198, 203 (2001).

Additionally, "[o]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" See *Missouri v. Frye*, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Premo v. Moore*, 131 S. Ct. 733, 743 (2011); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010).

In an effort to provide guidance as to how *Hill* applies to differing factual settings, the Supreme Court decided *Lafler* and *Frye* and established a constitutional standard applicable in all of the separate phases of a criminal trial to which the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that, but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In Frye, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

In the context of sentencing, prejudice means that but for counsel's error(s), acts and/or omissions, his sentence would have been significantly less harsh. See *Dell v. United States*, 710 F.3d1267 (11th Cir. 2013).

9

## V. DISCUSSION

**A.   Pretrial Counsel's Failure To: (1) Communicate with Sims and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial; (2) Conduct An Adequate and Independent Pretrial Investigation; and (3) Attempt to Negotiate A Favorable Plea Agreement with A Less Harsh Sentence Deprived Sims of Effective Assistance of Pretrial and Plea Context Counsel Under the Sixth Amendment to the Constitution of the United States.**

1.      <u>Failure to Communicate with Sims in regard to Decision to Plead</u>

Chapter 1, Rule 1.4: Communication of the Alabama Rules of Professional Conduct states that:

(a)    A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b)    A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Reasonable communication between the lawyer and the client is necessary for the client to effectively participate in the representation. It is one of the cornerstones of effective legal

representation by an attorney. In this case, Susan G. James ("James"), was Sim's retained attorney from pre-trial to sentencing. There was minimal communication from the beginning of this case between Sims and James, and he was unable to effectively participate in his defense. Counsel failed to meet the standard as set forth above in Rule 1.4 of the Alabama Rules of Professional Conduct. James failed to reasonably consult with Sims in regard to the decision to plead guilty or proceed to trial.

James did not formulate nor discuss with Sims any strategy for defense, instead she simply advised him proceed to trial. Sims believed that he would not get a longer sentence should he proceed to trial. He knew his criminal history status but knew nothing about career offender enhancement applying in his case. James failed to discuss with Sims the career offender enhancement's application.

Here, there should have been more visits with Sims to discuss his case. However, the number of visits is not as much in question here, as is the quality of defense rendered by James. James proceeded to trial with no strategy, failing to provide Sims with the guidance and support that he needed from his counsel. She failed to properly communicate with Sims. Her failure to reasonably communicate with Sims and formulate a defense or strategy resulted to neglect of duty and unfavorable outcome.

Sims was confident in proceeding to trial based upon the advice provided by James. Sims wholly relied on James's advice in regard to trial, and failed to explore the and consider the option of a lesser sentence via a plea agreement.

2.    <u>Failure to Conduct an Independent Pretrial Investigation</u>

Defense counsel has the obligation to conduct a "reasonably substantial, independent investigation." *Neal*, 239 F.3d at 688; *Magill v. Dugger*, 824 F.2d 879, 886 (11th Cir. 1987). The

Supreme Court has explained the governing standard:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland,* 466 U.S. at 690-91.

In this case, James failed to conduct a reasonable independent pretrial investigation of Sim's case. James failed to research the case law, investigate the purported confidential informant, interview witnesses, or investigate the facts of Sim's case. There was little or no independent pretrial investigation. James failed to move the Court for a private investigator to independently investigate Sim's case.

It is well settled in this circuit that a criminal investigation requires investigators to piece together evidence, often circumstantial and from multiple sources, to prove a Defendant's innocence or guilt. See *Elmore v. Ozmint*, 661 F.3d at 804 (4th Cir. 2011) ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" (quoting *Strickland*, 466 U.S. at 690-91). Although courts are typically required to show heightened deference to an attorney's strategic decisions supported by professional judgment, where a failure to investigate does not reflect sound professional judgment, such deference is not appropriate. Id.

In this case, there was no advice and information provided to Sims, and James failed to become familiarized with the relevant facts, case law, applicable Guidelines, and potential

sentencing range of a conviction. In addition, James failed to properly inform Sims of any other matters related to this case that led to his 360-month sentence. Had James done so, Sims could have made a more informed decision in regard to the options available for him. As such, there is a reasonable probability that he would have pleaded guilty and foregone a trial if James had informed Sims of this possible outcome and sentence.

Counsel's lack of knowledge of sentencing guidelines prevented her from adequately advising Sims of the options and possible consequences for each. James advised Sims to proceed to trial with the knowledge that he could be classified as a career offender. Sims would not have proceeded to trial if he had been provided the same knowledge.

As a result of James failure to research and properly prepare this case so that she could inform Sims of the relevant circumstances and likely consequences of his case so that he could make an informed decision of whether to plead guilty or to proceed to trial, his Constitutional right to effective counsel was violated. Accordingly, Sim's conviction and sentence is due to be vacated so that he can plea anew.

3.    Failure to Attempt to Negotiate A Favorable Plea Agreement

When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice. See *Lee v. United States*, 137 S. Ct. 1958 (2017). Where a defendant persists in a plea of not guilty, counsel's failure to properly inform him about potential sentencing exposure may constitute ineffective assistance. *United States v. Smith*, No. 96-5385, 1998 WL 136564 (6th Cir.Mar.19, 1998).

To obtain relief on an ineffective assistance claim, Sims ultimately must demonstrate that his attorney's performance was deficient, and that there is a reasonable probability that, but for

counsel's deficient performance, he would have proceeded to trial. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("Strickland"); see also, *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) ("Lafler"); *Missouri v. Frye*, 132 S. Ct. 1399 (2012) ("Frye"); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010) ("Padilla") ("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'") (quoting *McMann v. Richardson*, 397U.S. 759, 771 (1970)).

In *Hill*, the Court considered a Strickland claim based on allegations that the petitioner's lawyer had given bad advice that caused him to plead guilty instead of proceeding to trial. While there have been many cases analogous to *Hill*, it has been understood that *Hill* established a rule applicable to other circumstances when lawyers advise their clients at the plea-bargaining stage of the case. Cf. *Lafler*, supra; *Frye*, supra; *Padilla*, 130 S. Ct. at 1485 n.12. For instance, *Hill* has been applied to a case in which a lawyer was found to have provided ineffective assistance of counsel when the defendant rejected a plea deal and proceeded to trial in the face of overwhelming evidence of guilt and lacking any viable defense. See *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991).

The U.S. Supreme Court provided guidance in *Lafler* and *Frye* as to how *Hill* applies to differing factual settings, and established constitutional standard applicable in all of the separate phases of a criminal trial where the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a Defendant must show that but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less

14

severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

Because of James's erroneous assessment of the case, failure to properly prepare a defense, and advise Sims of his true options, Sims opted to proceed to trial. He was sentenced to 360 months, which has been described by others as being draconian.

This present matter is similar to *Lafler* in that Sims was ill-informed by James of the likely consequences of pleading guilty rather than proceeding to trial. Sims decided to proceed to trial based on James's consistent assurance that pleading guilty is not the right way to proceed. Had Sims been properly informed by James, he would have had a correct understanding of the facts, the law, and likely consequences of trial in order to make an intelligent and informed decision of whether to plead. "It is the lawyer's duty to ascertain if the plea is available and if it would lead to a shorter sentence, as well as if it is into voluntarily and knowingly. The lawyer must actually and substantially assist his client in deciding whether to plead guilty or proceed to trial. It is his job to provide the accused has an understanding of the law in relation to the facts." *Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005). The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. *Lafler*, supra. In other words, if the quality of counsel's advice falls below a certain minimum level, the client's decision whether to plead guilty or proceed to trial cannot be knowing and voluntary because it will not represent an informed choice. Id.

Also, whether a defendant pleads guilty or proceeds to trial, he must be aware of "the relevant circumstances and likely consequences" surrounding the plea. *Brady v. United States*, 397 U.S. 742(1970).

15

As such, James performed below an objective standard of reasonableness. Had she familiarized himself with the facts and researched the applicable law and sentencing guidelines, she would have been able to correctly inform Sims of the likely consequences and hurdles that he faced if he pled guilty or proceeded to trial. She failed to do so, and as a result, Sims was prejudiced by receiving a 360-month sentence. *Glover*, supra. James's misrepresentation of material facts, which Sims wholly relied on, constituted deficient performance. He suffered prejudice from James' acts and omissions when he received a 360-month sentence. As such, Sims easily meets *Strickland's* two prong test for ineffective assistance of counsel and relief should be granted in the first instance. James's errors in this case were substantial and prejudicial, and amounted to a failure of her duty to properly advise and represent Sims.

James's advice was not based upon relevant facts of his case, or points of law, but rather a result of a lack of a proper investigation and lack of communication with Sims. In turn, Sims had to wholly rely on his erroneous and uniformed advice. Thus, Sims was not fairly apprised of the consequences of his decision to proceed to trial. In other words, Sim's reliance on James' advice about the consequences of pleading guilty rather than proceeding to trial violated his due process rights. See *Hill*, 474 U.S. at 56. Accordingly, Sim's conviction and sentence should be vacated for relief in the first instance.

**B.** **Sentencing Counsel Failure To: (1) Correctly Discuss and Explain the PSR with Sims Prior to the Sentencing Hearing; (2) File Substantive Objections to the PSR; and (3) Object to Sim's Sentence Being Substantively Unreasonable, Deprived Him of Effective Assistance of Sentencing Counsel and A Fair and Just Sentence.**

  1-2. Failure to Correctly Discuss, and Explain the PSR with Sims and File Substantive Objections to the PSR

Prior to sentencing, the PSR was released by the Probation Office. She did not explain it to him so that he could understand the sentencing calculations. The PSR classified Sims as a career offender and calculated his Total Offense Level as 37, in Criminal History Category VI, yielding a guideline range for imprisonment of 360 months to life. Counts 1 and 2: The maximum term of imprisonment is 30 years, per count. 21 U.S.C. § 841(b)(1)(C). Count 3: The minimum term of imprisonment is 25 years, and maximum term of imprisonment is Life. 21 U.S.C. § 841(b)(1)(A). Therefore, the applicable guideline range is 25 to 30 years. See PSR ¶ 85.

James failed to file the following PSR Objections:

  i.  <u>Erroneous Application of the Career Offender and 851 Enhancement</u>

The First Step Act makes several changes to federal sentencing law. The act reduced the mandatory minimum sentences for certain drug offenses, expanded the scope of the safety valve, eliminated the stacking provision, and made the provisions of the Fair Sentencing Act of 2010 (P.L.111-220) retroactive.

The act adjusts the mandatory minimum sentences for certain drug traffickers with prior drug convictions. The act reduces the 20-year mandatory minimum (applicable where the offender has one prior qualifying conviction) to a 15-year mandatory minimum and reduces the life sentence mandatory minimum (applicable where the offender has two or more prior qualifying convictions) to a 25-year mandatory minimum. The act also changes the prior conviction criteria under which these mandatory minimum penalties apply. In order for these mandatory minimums to apply, the offender's prior convictions must meet the new criteria of a serious drug felony or a serious violent felony rather than any felony drug offense.

A "serious drug felony" is defined as an offense described in 18 U.S.C. Section

924(e)(2)—which encompasses only drug felonies that carry a maximum prison term of 10 years or more—**for which the offender served a term of imprisonment of more than 12 months** and the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense. Before the First Step Act, any prior conviction for a felony drug offense (meaning a drug offense with a maximum term of imprisonment of more than one year) counted for purposes of the repeat offender mandatory minimums.

A "serious violent felony" is defined as an offense described in 18 U.S.C. Section 3559(c)(2) for which the offender **served a term of imprisonment of more than 12 months** and any offense that would be a felony violation of 18 U.S.C. Section 113 if the offense were committed in the special maritime and territorial jurisdiction of the United States, for which the offender served a term of imprisonment of more than 12 months. Before the First Step Act, only drug felony convictions counted for purposes of the repeat offender mandatory minimums.

In this case, Sims was classified as a career offender because he was at least 18 years old at the time he committed the instant offense of conviction; and has at least two prior felony convictions of either a crime of violence or a controlled substance offense, to wit:

1)      01/19/2007: Distribution of a Controlled Substance (CC 07-753) in Talladega County Circuit Court. Sims was represented by counsel. He was originally charged with Trafficking in Cannabis. On October 20, 2008, Sims pled guilty. On December 10, 2008, he was sentenced to 60 months' custody and received 3 days jail credit. On November 23, 2009, Sims was released on parole; and

2)       03/18/2014: Distribution of a Controlled Substance (CC 15-166) in Talladega County Circuit Court. Sims was represented by counsel. On February 9, 2016, he pled guilty, was sentenced to 60 months' custody, and received 30 days jail credit, to run concurrent with any other sentences. On April 26, 2017, Sims was released on parole.

After the passage of the First Step Act, Sim's 2007 conviction for distribution of marijuana cannot be used as career offender predicate or as a "felony drug offense" pursuant to 21 U.S.C. §

18

851 nor as a "controlled substance offense" pursuant to 21 U.S.C. § 4B1.1 because Sims served for only 11 months and 13 days custody, which technically did not meet the required length of sentence of 1 year or 12 months (12 months and 1 day). Accordingly, Sim's sentence cannot be enhanced under the career offender guideline if he does not have at least 2 prior convictions of either a "crime of violence" or "controlled substance offense".

In light of *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), Sims would not be classified as a career offender or as a "felony drug offense" under § 851 nor as a "controlled substance offense" under § 4B1.1 because § 4B1.1 requires a sentence exceeding 1 year or 12 months (12 months and 1 day). In this case, Sim's 2014 conviction for distribution of a controlled substance is the only sentence that exceeded 1 year or 12 months (12 months and 1 day), and qualifies as a "controlled substance offense".

In *Simmons*, Jason Simmons pled guilty to federal drug trafficking, the district court held that his prior state conviction for marijuana possession, for which he faced no possibility of imprisonment, was for an offense "punishable by imprisonment for more than one year," triggering a sentencing enhancement under the Controlled Substances Act. This enhancement doubled Simmons' minimum sentence. The Fourth Circuit affirmed in an unpublished opinion. See *United States v. Simmons*, 340 Fed. Appx. 141 (4th Cir.2009). However, the Supreme Court vacated that judgment and remanded the case to the Fourth Circuit for "further consideration in light of *Carachuri-Rosendo v. Holder*," 130 S. Ct. 2577 (2010). A panel of the Fourth Circuit then held that *Carachuri* did not require any change in our prior holding. See *United States v. Simmons*, 635 F.3d 140 (4th Cir. 2011). The Fourth Circuit voted to rehear the case en banc, and vacated Simmons' sentence and remanded for further proceedings.

**21 U.S. Code § 841 - Prohibited acts A**

• Section 841(b)(1)(A)(viii) now provides for a sentencing range of 10 years to life if the offense involved "50 grams or more of methamphetamine", with possible enhancement to 15 years to life with a prior felony drug conviction, or 25 years to life with two prior felony drug convictions. (Counts 1 and 2)

• Section 841(b)(1)(C) now provides for a sentencing range of up to 20 years if the offense involved an unspecified amount of controlled substance in schedule I or II, with possible enhancement to up to 30 years with a prior felony drug conviction. (Count 3)

21 U.S.C. §§ 841(b), 851 (2018).

Because Sims only has 1 qualified serious drug felony conviction, his mandatory sentence is now 15 years to life and not 25 years to life. Hence, Sims should be resentenced to a term of 180 months' imprisonment.

## ii.    Drug Weight Calculation

Here, Sims urges the Court to assess *United States v. Stanback*, 377 F. Supp. 3d 618 (W.D. Va. 2019). In *Stanback*, Kelly George Stanback, represented by counsel, filed a motion to reduce his sentence pursuant to Section 404(b) of the First Step Act of 2018. ECF No. 1449. He asked the court to reduce his current sentence of 248 months to time served. The government asserted that Stanback was ineligible for consideration of a reduction in his sentence, and in the alternative, that if he was eligible for consideration, a further reduction of his sentence was not warranted. The government suggested that the only relief to which Stanback was entitled was a reduction in his term of supervised release from 5 years to 4 years. For the reasons set forth below, the court granted Stanback's request and modified his sentence to time served, to be followed by a 4-year term of supervised release.

### a.    Drug Weight

The drug weight is an element of the offense and that any fact that increases a mandatory

20

minimum penalty is an element that must be charged in an indictment and proved to a jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L.Ed.2d 435 (2000) and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Under those two cases, if Stanback were sentenced today, his sentence would be based on distributing 5 grams or more of cocaine base, and not 3,000 kg to 10,000 kg of Marijuana equivalent.

In *Apprendi*, the Supreme Court held that the Sixth Amendment to the Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. In *Alleyne*, the Court applied *Apprendi* to the federal mandatory minimum and maximum sentencing scheme and held that because mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an element of the crime that must be submitted to the jury. Id. at 116, 133 S.Ct. 2151 (overruling *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406, 153 L.Ed.2d 524 (2002) ).

Neither Apprendi nor Alleyne are retroactively applicable on collateral review. See *United States v. Sanders*, 247 F.3d 139, 146 (4th Cir. 2001) (joining other circuits in finding that Apprendi does not apply retroactively to cases on collateral review); and *United States v. Stewart*, 540 Fed. Appx. 171 (4th Cir. 2013) (per curiam) (noting that *Alleyne* has not been made retroactively applicable to cases on collateral review). However, for a period of time after *Apprendi* was decided, including before passage of the Fair Sentencing Act in 2010, the jury ordinarily made a finding regarding the threshold penalty, but the court could and did impose statutory-minimum penalties regardless of any jury finding. That practice was authorized by *Harris*, which *Alleyne* overruled three years later, and three years after the Fair Sentencing Act was enacted. Nonetheless, Congress,

when drafting the First Step Act in 2018, surely did not intend for courts to disregard the last six years of Supreme Court federal sentencing jurisprudence and this court declines to do so.

*Alleyne* made clear that in order to preserve a defendant's Sixth Amendment right to a jury trial, any fact that increases the statutory mandatory minimum sentence is an element of the crime which must be submitted to the jury. *Alleyne*, 570 U.S. at 116, 133 S. Ct. 2151.

In this case, Sims was found guilty of distribution of heroin (Counts 1 and 2) and possession with intent to distribute 50 grams or more of methamphetamine and an unspecified amount of heroin (Count 3).

Under *Alleyne*, this court is not free to ignore that finding and impose a penalty based on the 19,206.01 kilograms of Converted Drug Weight referenced in the PSR. Thus, although *Apprendi* and *Alleyne* are not retroactively applicable on collateral review, this court joins other courts in finding that their holdings are applicable in the context of the First Step Act. See *United States v. Simons*, No. 07-CR-00874, 375 F.Supp.3d 379, 487, 2019 WL 1760840 at *6 (E.D.N.Y. Apr. 22, 2019) (citing *Alleyne* and finding that statutory penalties are determined by facts submitted to a grand jury, trial jury, or established by a guilty plea, while findings by a judge may be used to determine a sentence within the statutory penalties and cannot change "the mandatory minimum sentence now applicable"); *United States v. Dodd*, No. 3:03-CR-18-3, 372 F.Supp.3d 795, 2019 WL 1529516 (S.D. Iowa, Apr. 9, 2019) (finding in a First Step Act case that "both Apprendi and Alleyne are binding on this Court for sentencings held today."); *United States v. Davis*, No. 07-CR-245(S)(1), 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019), appeal docketed, No. 19-874 (2nd Cir. Apr. 5, 2019) ("It is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act."); see also *United States v. Laguerre*, No. 5:02-CR-30098-3,

22

2019 WL 861417 (W.D. Va. Feb. 22, 2019) (relying without discussion on charged drug weight rather than PSR weight to find defendant eligible for relief).

In this case, Sims was charged to Counts 1 and 2 with Distribution of a Mixture and Substance Containing a Detectable Amount of Heroin (no specified amount); and Possession with the Intent to Distribute 50 Grams or More of Methamphetamine and a Mixture and Substance Containing a Detectable Amount of Heroin as to Count 3, yet the Court attributed 19,206.01kilograms of Converted Drug Weight instead of 50 grams or more of methamphetamine to Sims.

Since Sims has been sentenced after the passage of First Step Act of 2018, his Base Offense Level would be 24. See 2018 Sentencing Guidelines, "At least 50 G but less than 200 G of Methamphetamine," calls for a Base Offense Level of 24 pursuant to § 2D1.1(c)(8). Here, Sim's prior total offense level was at 37 pursuant to § 4B1.1(b). Absent the career offender enhancement, Sim's Total Offense Level should now be 24, in Criminal History Category IV, establishing a sentencing guideline range of 77 to 96 months. Again, Because Sims only has 1 qualified serious drug felony conviction, his mandatory sentence is now 15 years to life and not 25 years to life. Hence, Sims should be resentenced to a term of 180 months' imprisonment.

iii.    <u>Drug Purity</u>

The U.S. Sentencing Guidelines use drug purity as a proxy for a defendant's culpability. The Guidelines say, in relevant part, "the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs." U.S.S.G. § 2D1.1 cmt. n.27(C). As a result, the Guidelines make a distinction between "methamphetamine" and "actual methamphetamine." Id. § 2D1.1(c). All else equal, defendants

caught with actual methamphetamine get longer sentences than defendants caught with methamphetamine mixture. Id.

According to the Guidelines, "[i]n the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater." U.S.S.G. § 2D1.1(c) n.(B). "No other drug is punished more severely based on purity." *United States v. Hayes*, 948 F. Supp. 2d 1009, 1025 (N.D. Iowa 2013)

Sims now "respectfully requests this Court reject that purity level distinction in sentencing him because the facts of this case, and all credible data gathered since the time the Sentencing . . . Commission promulgated these rules and related policy statements demonstrate that the purity level of methamphetamine is not indicative of culpability." *United States v. Robinson*, NO. 3:21-CR-14-CWR-FKB-2 (S.D. Miss. 2022). In *United States v. Nawanna*, 321 F. Supp. 3d 943 (N.D. Iowa 2018), the United States conceded that there is no empirical basis for the Sentencing Commission's 10-to-1 weight disparity between actual methamphetamine and methamphetamine mixture.

Just as courts have criticized the link between drug quantity and the offender's role, they have also debunked the Guidelines' assumed connection between drug purity and criminal role. *United States v. Johnson*, 379 F. Supp. 3d 1213, 1223-24 (M.D. Ala. 2019). "In sum, this court joins other district courts in rejecting the methamphetamine guidelines' 10-to-1 ratio because it is 'based on a flawed assumption that methamphetamine purity is a proxy for role in the offense.'" Id.

The Guidelines use drug purity as a proxy for culpability. But national experience suggests that is no longer true for methamphetamine. The DEA data show that most methamphetamine

24

confiscated today is "pure" regardless of whether the defendant is a kingpin or a low-level addict. See *United States v. Hendricks*, 307 F. Supp. 3d 1104, 1108 (D. Idaho 2018). "Today, most methamphetamine seized at all distribution levels is remarkably pure, which means that higher purity is not a good indicator of a defendant's place in the chain of distribution." *United States v. Carrillo*, 440 F. Supp. 3d (2020).

Given the on-the-ground reality in methamphetamine cases, the better way to determine culpability is to examine all of the circumstances of the defendant's case and life – seeing the defendant as a "whole person," as the Supreme Court just instructed in *United States v. Concepcion*, 142 S. Ct. (2022). There are sentencing enhancements available for leaders, organizers, or managers of criminal enterprises. If the defendant's case warrants, those enhancements should be applied. In the context of methamphetamine, though, purity is no longer probative of the defendant's culpability. *United States v. Robinson*, supra.

Based upon the Judge Carlton Reeves ruling in *Robinson*, the purity of the methamphetamine that in Sim's case should be not be used as a proxy for culpability, thereby effectively increasing his sentence herein.    Accordingly, because the purity of the methamphetamine on Sim's case was used as a proxy, his sentence is due to be vacated, with Sims being resentenced without the purity of the substance taken into account.

3.    <u>Failure to Object to Sim's Sentence Being Substantively Unreasonable</u>

With regard to the 18 U.S.C. § 3553(a) sentencing factors, James failed to file any kind of a motion for a downward variance on behalf of Sims. She also failed to object to Sim's sentence being substantively unreasonable. In this case, Sim's sentence is not commensurate with the seriousness of his offense.

The court's finding of facts were based upon criminal history which was not properly

25

Reviewed. Sims decided to proceed to trial because his attorney represented that she could win this trial, or at least ensure a favorable sentence. Counsel's performance at trial was deficient resulting in prejudice to Sims. Had James been prepared, properly argued PSR objections to the offense level enhancements, and argued for mitigation of his sentence, there is a strong likelihood that Sims would have received a substantially less harsh sentence.

Finally, James asserts that the increase in the calculation of his sentencing range based on the erroneous drug calculation, career offender and 851 enhancements, resulted in a longer sentence. If so, this could be deemed a miscarriage of justice.

## V. CONCLUSION

For the above and foregoing reasons, Sim's sentence should be vacated so that he can plea anew or be resentenced without the career offender and proper 851 enhancements. In the alternative, it is respectfully requested that the Court hold an evidentiary hearing so that Sims may further prove his meritorious grounds for relief, resolve facts in dispute and expand an incomplete record.

Respectfully submitted,

**s/ Rolando Rankin**
Rolando Rankin
Attorney for Movant, Jumar Sims,
P.O. Box 1536
Birmingham, AL. 35201
(205) 251-2520 (off)
(205) 776-7809 (Fax)
therankinfirm@gmail.com

26