FILED

2023 Sep-01  PM 09:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JUMAR D. SIMS,** | ) | |
| **Movant,** | ) | |
| | ) | |
| **v.** | ) | **2:22-cv-08039 LSC** |
| | ) | **(2:18-cr-00353-LSC-JHE)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent** | ) | |

## GOVERNMENT'S OPPOSITION TO
## SIMS'S SECTION 2255 MOTION

Comes now the United States of America, by and through its counsel, and respectfully requests this Court deny Jumar Sims's Motion to Vacate, Set Aside, or Correct Sentence filed pursuant to 28 U.S.C. § 2255.  Sims claims that he was denied the effective assistance of counsel at the guilt and sentencing phases of his case by his attorney. The United States herein responds to specific allegations against Sims's trial counsel and certain arguments he makes in connection with alleged failures of counsel.  For the reasons set forth below, Sims's motion should be denied.

## PROCEDURAL and FACTUAL SUMMARY

A Northern District of Alabama grand jury returned an indictment charging Sims with distribution of a mixture and substance containing a detectable amount of

heroin (Counts One and Two), and possession with the intent to distribute fifty grams or more of methamphetamine and a mixture and substance containing a detectable amount of heroin (Count Three).

The essential facts of Sims offenses are not in dispute.  On January 11, 2018, and February 7, 2018, Sims sold an informant 26.7 grams and 27.9 grams, respectively, of a substance containing a detectable amount of heroin.   The transactions were recorded and monitored by law enforcement.[1]  The informant then arranged to buy one kilogram of methamphetamine from Sims on February 21, 2018. When Sims arrived at the agreed-upon location agents arrested him, seizing a bag of narcotics from the vehicle he drove.  The bag contained some 990 grams of 97% pure methamphetamine. The same bag also contained 56 grams of a substance containing a detectable amount of heroin. Sims subsequently made incriminating statements to officers.

Sims was initially arrested on related State of Alabama drug charges.  He was released on state bond on or about February 23, 2018. Accord. Cr. Doc. 12.[2] The

---

[1] The video recording of the second controlled purchase malfunctioned. However, agents monitored the transaction by audio. PSR at 6.

[2] As used herein, citations to the underlying criminal case, 2:18-cr-353-LSC-JHE, are "Cr. Doc."; citations to the civil docket, 2:22-cv-8039-LSC, are "Cv. Doc."; citations to the appellate docket, 11th Circuit case number 19-13963, are "Ap. Doc."

federal indictment returned in July 2018.

On or about August 2, it was reported that the informant had been shot to death.  Local authorities named Sims as a person of interest in connection with the killing.[3]  On August 15, Sims was arrested in the Northern District of Georgia. Cr. Docket entry 8/15/2018.  Sims made his appearance in the Northern District of Alabama on September 14, 2018.  Sims was initially represented by retained attorneys Victor Revill and Douglas Scofield. Cr. Docs. 6, 18.  In January 2019, Sims retained Susan James, who entered her appearance in the case. Cr. Doc. 38. The Court subsequently permitted Revill and Scofield to withdraw. Cr. Doc. 43.

Prior to trial, the United States filed an information establishing that Sims had two or more prior convictions for a felony drug offense for each of which he had served over one year in prison. Cr. Doc. 62.  Sims persisted in his not guilty plea and, following two days of trial, was found guilty of Counts One, Two, and Three of the indictment.

The Probation Office prepared a presentence investigation report (PSR) for Sims.  It reflected a 25-year statutory minimum sentence, following from Sims's prior convictions and the government's notice thereof under 21 U.S.C. § 851. Cr.

---

[3] See https://www.waff.com/story/38797534/man-shot-killed-near-huntsvilles-providence-area/, last retrieved September 1, 2023.

Doc. 62.  Sims was classified as a "career offender" under the sentencing guidelines, with an advisory guideline range of 25 to 30 years imprisonment. Cr. Doc. 84

The United States filed objections to the PSR. Cr. Doc. 77.  Sims did not. Sims did object to the notice of prior convictions (under 21 U.S.C. § 851) used to establish increased statutory penalties for his offenses. Cr. Doc. 82.  (The Court overruled that objection at sentencing.)

Following a sentencing hearing in September 2019, the Court sentenced Sims to a total of 360 months imprisonment for Counts One, Two, and Three, separately, with each sentence to be served concurrently, followed by a term of 180 months of supervised release. Cr. Doc. 85 (judgment).

In October 2019 Sims filed a notice of appeal in the district court.  The appeal was docketed as case number 19-13963 in the Eleventh Circuit Court of Appeals. The Circuit ultimately denied Sims's appeal in an October 2021 opinion, issued as a mandate in November 2021. Ap. Docs. 60, 61, 62.

In November 2022, Sims filed (through counsel) the instant motion under Section 2255. Cv. Doc. 1, Cr. Doc. 117.  The essence of the motion is an allegation of ineffective assistance of counsel at trial. Sims alleges that his attorney, Susan James, suffered from "health complications" that "limited her time and ability to meet with the Defendant prior to trial" and that she only first met with him two days

before trial. Cv. Doc. 1 at 2.  Sims speculates that James "may have been under the influence of medication during the trial" and claims that she failed a file a motion for new trial. Id.

In a subsequent "memorandum of law" (Cv. doc. 2, filed January 2023) Sims expands his allegations against James to include: failure to communicate the likely consequences of a plea compared to proceeding to trial; failure to conduct a pretrial investigation; failure to attempt to negotiate a plea agreement; failure to discuss the PSR; failure to object to the PSR; and failure to object to the reasonableness of Sims's sentence. Id. at 1-2.

## ARGUMENT

Sims's § 2255 motion should be denied as his claims of ineffective assistance of counsel are without merit.  Specifically, he has not carried his burden to show deficient performance by his counsel or that he was prejudiced by such performance.

**Authority**

To prevail on a claim of ineffective assistance of counsel, Sims must establish that counsel's performance was deficient, *i.e.,* that it "fell below an objective standard of reasonableness," and that such deficient performance prejudiced the petitioner's defense.  Strickland v. Washington, 466 U.S. 668, 687-88 (1984); see also Bell v. Cone, 535 U.S. 685, 697-98 (2002); Caderno v. United States, 256 F.3d

5

1213, 1217 (11th Cir. 2001).  The movant has the burden of establishing both prongs of the Strickland analysis. Lawhorn v. Allen, 519 F.3d 1272, 1293 (11th Cir. 2008).[4]

The court presumes that petitioner's counsel acted reasonably. Strickland, 466 U.S. at 690; Williams v. Head, 185 F.3d 1223, 1228 (11th Cir. 1999) ("[W]here the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.").  To overcome that presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Strickland, 466 U.S. at 690. Conclusory or unsupported allegations cannot support an ineffectiveness of counsel claim. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (finding "unsupported allegations, conclusory in nature and lacking factual substantiation" to be an insufficient basis

---

[4] In Lawhorn, the court of appeals stated:

> To establish a constitutionally deficient performance, the defendant must "identify the acts or omissions ... that are alleged not to have been the result of reasonable professional judgment" to "show that counsel's representation fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 687, 690. The "highly deferential" reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Id. at 689, and recognize that cases warranting the grant of habeas relief based on an ineffective assistance claim "are few and far between." Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quotation and citation omitted).

for relief); see also Chandler v. United States, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc) ("An ambiguous or silent record is not sufficient to disprove the strong and continuing [Strickland] presumption."). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690–91. The defendant must show no competent counsel would have taken the action that his counsel took. Chandler, 218 F.3d at 1315.[5]

If counsel's performance is found to be constitutionally deficient, the movant must also prove prejudice. To succeed under this prong of the analysis, the movant must establish "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. That "the errors had some conceivable effect on the outcome of the proceeding is not enough;" there must be a reasonable probability. Strickland, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. And when the defendant challenges a not-guilty plea, he "must show

---

[5] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Id. at 1316.

that there is a reasonable probability that, but-for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial." Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (alteration in original) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). The Court need not reach the performance prong if it is convinced that the prejudice prong has not been met. Boyd v. Allen, 592 F.3d 1274, 1293 (11th Cir. 2010).

Here, Sims allegations of ineffective assistance fall into two categories: pretrial failures and sentencing failures.  He alleges that but for his counsel's pretrial failures, he would have pleaded guilty instead of proceeding to trial. Cv. Doc. 2 at 11 ("Sims was confident in proceeding to trial based upon the advice provided by James"), 13 ("…there is a reasonable probability that [Sims] would have pleaded guilty and foregone a trial if James had informed Sims of this possible outcome and sentence."), 15 ("Because of James's erroneous assessment of the case, failure to properly prepare a defense, and advise Sims of his true options, Sims opted to proceed to trial.").  He alleges that but for his counsel's failures in connection with sentencing, Sims would have received a lesser sentence. Id. at 26 ("Had James been prepared, properly argued PSR objections to the offense level enhancements, and argued for mitigation of his sentence, there is a strong likelihood that Sims would have received a substantially less harsh sentence.")  As Sims has failed to meet his

8

burden as to any of the claims he raises, they should be summarily denied.

**Counsel's alleged pretrial failures**

In order to meet the prejudice prong when the defendant proceeded to trial rather than pleading guilty, the defendant must prove with reasonable probability that four things would have occurred but-for the ineffective assistance of counsel. The defendant must prove that he "would have accepted the plea," that "the prosecution would not have withdrawn it in light of intervening circumstances," that "the court would have accepted its terms," and that "the conviction or sentence, or both, under the offer's terms would have been less severe" than the imposed sentence. United States v. Smith, 983 F.3d 1213, 1221-22 (11th Cir. 2020) (quoting Lafler v. Cooper, 566 U.S. 156, 164 (2012)). A defendant's *post hoc* assertions of how he would have pled but-for his attorney's deficiencies are not sufficient to show prejudice. Lee v. United States, 582 U.S. 357, 369 (2017). Additionally, if the record does not suggest that any hypothetical plea would have been for a lower sentence than the sentence imposed, the defendant fails to carry his burden. Osley v. United States, 751 F.3d 1214, 1226 (11th Cir. 2014). This is particularly the case when the sentencing court had "extensive justification" for the imposed sentence, leaving it highly unlikely that any different sentence would have ultimately resulted. Id.

Further, "a defendant has no right to be offered a plea, nor a federal right that

9

the judge accept it." <u>Missouri v. Frye</u>, 566 U.S. 134, 148 (2012) (citations omitted). Plea bargains rest solely within the prosecution's discretion and "counsel cannot force the state to plea bargain." <u>Zamora v. Dugger</u>, 834 F.2d 956, 960 (11th Cir. 1987). And because conjecture is not enough to prove prejudice, a "wholly speculative" guess at what the terms of any hypothetical plea *might* have been is not sufficient to show prejudice. <u>Osley</u>, 751 F.3d at 1225. This is especially so when any existing plea negotiations "never advanced to any level of specificity". <u>Cook v. United States</u>, 613 F. App'x. 860 (11th Cir. 2015). And the "strong presumption of reliability" accorded to judicial proceedings does not apply to hypothetical plea deals or other "judicial proceedings that never took place." <u>Lee</u>, 582 U.S. at 365 (citation and quotation marks omitted). A defendant's naked assertion in a motion that "there is a reasonable probability he would have accepted the plea" is not enough; "restating the standard is not the same as meeting it." <u>Jensen v. United States</u>, 780 F. App'x 800, 802 (11th Cir. 2019) (holding that prejudice was not proven where defendant never told counsel she wanted a plea deal, and the government never offered a plea deal).

Sims claims that counsel did not explain the consequences of guilty plea to him – specifically, that he would qualify as a "career offender" under the sentencing guidelines. But Sims fails to show how his knowledge of this designation would

have changed his plea decision, as he would have qualified as a career offender whether convicted by plea or at trial.   Stated another way, it was Sims's uncontroverted criminal history that made him a career offender under the guidelines; whether he was convicted of any of the indicted offenses at trial or by plea would not have changed this designation.

Sims further faults his counsel for a lack of trial "strategy," though he offers no specifics as to what strategic choices she failed to adequately consider or what probable and practical effect different choices would have had on his case. Specifics are, however, necessary for Sims to sustain his burden. See, e.g., Tejada v. Dugger, 941 F.2d 1551 at 1559 ("A petitioner is not entitled to an evidentiary hearing . . . when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible.") (citations and internal quotation marks omitted).  And it cannot be questioned that the selection of a defense theory is a strategic choice, which is entitled to significant deference on review.  "The Supreme Court has mandated a highly deferential review of counsel's conduct, especially where strategy is involved." Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) (citing Strickland, 466 U.S. at 689-90).  To show that a strategic decision by counsel constitutes deficient performance, a petitioner "must meet the onerous burden of demonstrating that *no* competent counsel would have

11

taken the action that his counsel did take." Taylor v. Sec'y, Fla. Dept. of Corr., 760 F.3d 1284, 1298 (11th Cir. 2014) (citations and internal quotation marks omitted) (emphasis in original).  Sims cannot show any strategic decision of his counsel caused him to fail to plead guilty.

Finally, Sims cannot show that the government was willing to offer him any plea agreement, much less one that lowered his sentencing exposure – especially considering the strong evidence against him and his significant criminal history. Likewise, he cannot demonstrate that any of his counsel's alleged failures prevented him from pleading guilty, with or without a plea agreement.  In evaluating counsel conduct in relation to plea negotiations, this Court should presume counsel was effective. White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992).

**Counsel's alleged sentencing failures**

Sims faults his counsel for failing to pursue several courses of action at sentencing, to wit: failing to object to Sims's designation as a "career offender" under the guidelines; failing to object to the statutory, recidivist sentencing enhancements under 21 U.S.C. § 851; failing to object to the guidelines drug weight and purity calculations; and failing to object to the sentence on reasonableness grounds.  Here, too, Sims must establish that his counsel's actions violated a

12

constitutional standard and that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.

First, it should be noted that – contrary to Sims's allegations – James did object to the Section 851 enhancement and to the reasonableness of Sims's sentence. Cr. Docs. 82 (OBJECTION TO 21 U.S.C. §851 ENHANCEMENT), 110 (Sentencing transcript) at 16. That those objections were unpersuasive to the Court does not establish deficient performance or prejudice.

Moreover, Sims faults his counsel for failing to make certain objections not supported by facts in the record. He argues that his counsel should have objected to the categorization of his 2007 Distribution of a Controlled Substance conviction as a "controlled substance" offense in view of U.S.S.G. § 4B1.1 based on the length of sentence served. However, the record does not support his argument.

Likewise, Sims argues that counsel should have made novel arguments about the calculation of drug weight affecting his guideline calculations. Specifically, he argues that Alleyne v. United States, 570 U.S. 99 (2013), stands for the idea that the Court cannot consider the guideline sentence for drug weights not established by a jury finding. Cv. Doc. 2 at 22. His argument is misplaced, as Alleyne only requires that the government allege and prove to a jury those facts that trigger a minimum mandatory sentence; this was done here, as the jury found Sims to have possessed

50 or more grams of methamphetamine. Cr. Doc. 67. That his counsel did not attempt to persuade the Court of his novel reading of caselaw or his policy disagreements with the sentencing guidelines does not establish ineffective assistance of counsel. See Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

In sum, the Court's sentence was within both the advisory guideline range (specifically, at the low end) and the statutory range, and Sims cannot establish that he would have received any more favorable sentence had his attorney advocated differently. And because the Court had "extensive justification" for its imposed sentence, Sims's speculation that he could have received a substantially lower sentence had counsel made different choices is insufficient. See Osley v. United States, 751 F.3d at 1226.

## CONCLUSION

For all the foregoing reasons, Sims's §2255 motion should be denied.[6]

Respectfully submitted,
PRIM F. ESCALONA
United States Attorney

*/s/ electronic signature*
AUSTIN D. SHUTT
Assistant United States Attorney

---

[6] Rule 8 of the Rules Governing Section 2255 Proceedings provides that the Court should determine whether to conduct a hearing after reviewing, inter alia, the Government's answer and the transcripts and record of the previous proceedings.  "'A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.'"  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979) (stating this rule in the context of an ineffective-assistance-of-counsel claim)); see also Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991).

## **CERTIFICATE OF SERVICE**

This is to certify that, on September 1, 2023, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system which will send

notification of such filing to the defendant's attorney of record.


_/s/ electronic signature_
Austin D. Shutt
Assistant United States Attorney